UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| EILEEN M. RILEY, | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| vs. | ) | Case No. 4:08CV00206 ERW |
| U.S. BANK, | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment [doc. #54].

## I. PROCEDURAL HISTORY

Eileen Riley ("Plaintiff") filed this lawsuit on February 8, 2008. In her original Complaint, Plaintiff named US Bancorp, US Bancorp Community Development Corporation and U.S. Bank as defendants, and she sought to recover for employment discrimination based upon her sex under Title VII of the Civil Rights Act of 1964, age discrimination, and violations of the U.S. Bank Code of Ethics. On February 29, 2009, Plaintiff filed a First Amended Complaint. The First Amended Complaint only named U.S. Bank as a defendant and Plaintiff did not add any additional grounds for relief.

The first two complaints were drafted by Plaintiff, and after the Court appointed Melanie Ann Renken as counsel for Plaintiff,[1] she submitted a Second Amended Complaint to the Court

---

[1] The Court originally appointed Mary B. Schultz to serve as counsel for Plaintiff. After Ms. Schultz withdrew as Plaintiff's counsel, Plaintiff sought to file a Second Amended Complaint. After a hearing on December 11, 2008, the Court issued a Memorandum and Order denying this amendment, stating that "[t]he Court finds that Plaintiff has not shown any reason or need for this amendment." The Court then appointed new counsel for Plaintiff.

on February 17, 2009. This complaint named U.S. Bank as the only defendant in this action, and enumerated four counts. In Count I, Plaintiff seeks to recover under Title VII for gender discrimination, hostile work environment and retaliation. In Count II, she makes a claim under the Missouri Human Rights Act ("MHRA") for gender discrimination, hostile work environment and retaliation. Count III is a claim under the Equal Pay Act ("EPA"), and Count IV is a claim for fraud due to U.S. Bank's representations in its Code of Ethics. The Second Amended Complaint is the operative pleading in this action, and U.S. Bank ("Defendant") asks that the Court dismiss these claims.[2]

## II. LOCAL RULE 7-4.01(E)

Plaintiff's Response fails to satisfy the Local Rules. The Local Rules specifically require "specific references to portions of the record, where available, upon which the opposing party relies." Local Rule 7-4.01(E). Local rules such as this are implemented in order to prevent district courts from having to "scour the record looking for factual disputes." *Northwest Bank and Trust Co. v. First Illinois Nat'l. Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

Plaintiff only addresses 1-18 of Defendant's Statement of Uncontroverted Facts, when Defendant's Statement of Uncontroverted Facts contained 103 statements. The statements of fact to which Plaintiff does not respond are "deemed admitted for purposes of summary judgment" because Plaintiff failed to specifically controvert these facts. Local Rule 7-4.01(E).

---

[2] In her Response, Plaintiff asks that the Court consider her prior claim for age discrimination and states that she is also "seeking disciplinary actions on all attorneys involved in this case, the Missouri Bar and National Employment Lawyers Association (NELA) and should be joined." New claims cannot be raised in response to motions for summary judgment. *See Frentzel v. Moore*, 2008 WL 2373119, at *5 n.10 (E.D. Mo. June 6, 2008). These claims and parties are not properly before the Court, and will not be addressed in this Memorandum and Order.

2

The Court has reviewed the eighteen statements in Plaintiff's Response. Eight of her statements merely say "Deny. Asked and Answered" or "Deny. Answered previously" without any supporting citations. The Local Rules specifically require that matters in dispute must "be set forth with specific references to portions of the record, where available, upon which the opposing party relies." Local Rule 7-4.01(E). These generic responses do not satisfy this rule, and the statements of fact to which they respond will be deemed admitted.

In the remaining nine statements[3] in Plaintiff's Response, Plaintiff provides the Court with more details for the basis of her denials than the statements quoted above, however, Plaintiff has failed to include specific references to portions of the record, and her responses contain unsubstantiated allegations.[4] When available, specific references are required under the local rules. Local Rule 7-4.01(E). Plaintiff has presented no evidence that these references were not available, and a district court does not abuse its discretion when it deems admitted those statements of undisputed facts that violate the local rules. *Id.* at 1033. Accordingly, all statements of fact that are not supported by citations to the record will be considered admitted for the purposes of the pending motion. Plaintiff has submitted neither an affidavit or other evidence sufficient to create a genuine dispute, and accordingly, the Court will consider the Statement of Uncontroverted Material Facts submitted by Defendants to be admitted by Plaintiff for the purpose of the pending motion.[5]

---

[3] Plaintiff admits number 10 of Defendant's Statement of Uncontroverted Facts.

[4] Some of these Responses do contain references to deposition transcripts or other evidence. However, the Court has reviewed the exhibits upon which Plaintiff relies, and they do not stand for the propositions Plaintiff claims.

[5] The Court notes that Plaintiff submitted a surreply and exhibits on August 10, 2009. "Additional memoranda may be filed by either party only with leave of Court." Local Rules 7-4.01(c). Under the Local Rules, Plaintiff needed leave to file these documents. *See Ronwin v. Ameren Corp.*, 2007 WL 4287872, at *2 (E.D. Mo. Dec. 6, 2007). The Court expects the Parties

## III.   BACKGROUND FACTS[6]

Plaintiff obtained a college degree in Business Administration with an emphasis in marketing.  Plaintiff had significant prior work experience, however, she had no prior experience in the positions she held when employed by Defendant.  Plaintiff was hired by Defendant in June or July 2002 as a Sales Assistant for $27,000 a year.  She received a Code of Ethics employee handbook when her employment with Defendant began.  Her initial salary was higher than a male candidate that was hired in the same year, and in her tenure as a Sales Assistant, Plaintiff made more money than the male Sales Associates.

In December 2003, Plaintiff applied for a position as a Compliance Representative.  She was interviewed by Steve Roberts ("Roberts") and hired for this position.  Plaintiff received a $7,000 raise, bringing her annual salary to $35,000.  Plaintiff only worked with Steve Roberts for three weeks, at which time he voluntarily left U.S. Bank for another job.  Plaintiff alleges that during the period she worked for Roberts, he treated her differently than other Compliance Representatives by asking her to send faxes, conduct internet research on NASD regulations and take a personality test from a magazine.  Plaintiff also alleges that he chuckled on an elevator they shared when the elevator played a recording that said, "going down."  Plaintiff asked a co-worker, Eric Webster, whether Roberts' request that she send a fax and take the personality quiz were typical, but she never complained to anyone about any of these incidents and she did not tell anyone about what happened in the elevator.

---

"to abide by the Federal Rules of Civil Procedure and Local Rules" and will strike these documents.  *Id.*

[6] The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Facts [doc. #55] and Defendant's Response to Plaintiff's Statement of Controverted Facts [doc. #63].

Plaintiff did not get along with her co-workers. Plaintiff believes that she was not liked by her co-workers because they thought that she was responsible for getting Roberts fired, even though Roberts resigned for another job. Plaintiff does not believe that her co-workers were hostile to her because of her gender, and none of them told her that they believed she was responsible for getting Roberts fired. Joni Lovell ("Lovell") replaced Roberts as Plaintiff's manager. Plaintiff told her that she was "glad" that Roberts was gone and stated that she "really hope[d] that you consider taking the job because of the hostility that I'm experiencing with the group," but provided no elaboration on her sentiment and did not specify the problems she experienced with Roberts.

In August 2004, Craig Brannam ("Brannam") was hired to work at U.S. Bank as a Compliance Representative, and as Plaintiff's co-worker. Prior to his employment with U.S. Bank, Brannam had acquired a BA in Finance and a Masters degree in Business Administration in Finance. Additionally, he held his Series 7[7] and Series 63[8] licenses and possessed six years of prior banking and finance experience. While working as a Compliance Representative, Plaintiff was paid less than her male and female co-workers. At her deposition, Plaintiff stated that she believed she received less money than her co-workers because her previous work experience was not working in a bank. The other Compliance Representatives had different job duties than Plaintiff.

In or around the second quarter of 2005, Plaintiff told Lovell that things were improving with her co-workers, but that there was still some hostility. At her deposition, Plaintiff stated that

---

[7] This license is earned after passing the General Securities Representative Exam, which required to become a registered representative of a broker-dealer in the United States.

[8] This license is earned upon passing the Uniform Agent State Law Examination, which qualifies candidates as security agents within a state.

her concerns were satisfied because a U.S. Bank human resource representative came to speak with the group twice about coming to human resources with problems.

Plaintiff stated at her deposition that in the summer of 2005, Brannam asked her "what would it take to pursue you?" In December 2005, Plaintiff drove Brannam to his car in a snowstorm, and he thanked her and told her that he would have to take her to lunch sometime to repay her. In late 2005 or early 2006, while at the office, Plaintiff stated that Brannam asked her, "when can I have you all to myself?" Plaintiff stated that she was not offended by his comments because she considered them to be friendly flirting. Plaintiff stated at her deposition that she "didn't characterize it as sexual harassment" and said that "the flirting and - you know, it wasn't offensive at all." She did not complain to human resources about any of these comments or actions.

Brannam was in a relationship with another woman, to whom he became engaged and married while working at U.S. Bank. Plaintiff believed that the engagement was not real and was orchestrated to send her mixed signals. Plaintiff became upset that Brannam was not being truthful and had brought additional pictures of his fiancé to work. She requested that his workspace be moved so that she wouldn't have the distraction, and Lovell complied with her request and moved Brannam sometime around April 2006.

In November 2006, Plaintiff met with Lovell to discuss Brannam and complain that he continued to deny that he had engaged in flirtatious behavior in 2005. Lovell decided that she needed to involve human resources, and she sent Plaintiff to talk to Debby Gabris ("Gabris") from that office. Plaintiff did not complain to the human resources representative that she was being sexually harassed or discriminated against based upon her gender.

6

Plaintiff disagreed with Lovell's management style, and at a staff meeting in December 2006, Plaintiff called Lovell a "bitch" under her breath at a staff meeting, which was overheard by others in the room. Plaintiff decided around September 2006 that she would like to work in a different area of U.S. Bank. She approached Lovell and Gabris about finding a new job, and Gabris recommended that she apply for a new position in the Compliance Department within the Community Development Corporation ("CDC"). Plaintiff voluntarily left her position as a Compliance Representative and began a new position in the Compliance Department of the CDC in February 2007.

The employees in the Compliance Department of the CDC had different job responsibilities, and unlike her co-workers, Plaintiff was largely responsible for Sarbanes-Oxley reporting, CIS reporting and ATS reporting. Plaintiff's new job was seven blocks away from the office where she worked as a Compliance Examiner and where Brannam worked. Plaintiff's new supervisor was Cheryl Williams ("Williams"), and Williams stated at her deposition that she did not know of Plaintiff's past problems with Brannam or Roberts.

In July 2007, Plaintiff sent Brannam a note through the interoffice mail system. The note stated:

> Dearest Craig,
> My heart can no longer contain all the peace and joy I feel since little Ocean's arrival - May according to my records.
> I've enclosed some pictures and keepsakes I thought you would appreciate. She's growing so fast; I don't want you to miss out on this time in her life! I even enclosed a couple of diapers knowing that you intend on being a fully engaged Daddy! We also have an abundance of formula but too bulky to send.
> We are really enjoying the Princess and Care Bare - Caring hearts CDs; we think of our Backwoods Boy every time we watch them.
> Til we see you face-to-face and eye-to-eye - The Ocean Family.

Enclosed with this note was a collection of magazines, coupons and diaper samples demonstrating that a baby registry had been established for "Ocean Riley." Plaintiff stated that she sent this letter

7

because she had been receiving baby magazines and materials in the mail for several months and she believed that Brannam was responsible for her receipt of these materials. Plaintiff stated that she never asked Brannam if he had sent these items, and Brannam testified at his deposition that he had nothing to do with these magazines and baby items. Brannam found this letter disturbing and immediately reported the letter and materials to his supervisor, Lovell, who called human resources and spoke with Gabris.

On July 11, 2007, Gabris issued Plaintiff a written warning for mailing Brannam the baby materials. In the meantime, Plaintiff's disagreements with Williams' management escalated. On July 23, 2007, Plaintiff received a separate written warning from Williams for refusing to perform her job duties. Plaintiff does not dispute that she refused to perform the duties for which she was issued the warning, but she maintains that those duties were not legitimate. After receiving this warning she met with other managers in the department and stated that she did not want to continue performing her job because it was too administrative.

On November 13, 2007, Plaintiff attended a department meeting led by Williams in preparation for a division-wide meeting to be held the next day. Plaintiff announced in the middle of the meeting that what Williams was talking about was pointless. Williams asked Plaintiff to leave the meeting because she was being rude. The division-wide meeting was held the next day, on November 14, 2007. Approximately 60 to 70 employees attended this meeting, including the entire CDC and employees flown in from elsewhere around the country. Williams conducted a presentation at that meeting, and during her presentation, Plaintiff interrupted to dispute what she was saying. Plaintiff also said that Williams was "full of shit." Plaintiff was terminated as a result of her outburst in this meeting.

Plaintiff filed a Charge of Discrimination with the Equal Opportunity Commission ("EEOC") and the Missouri Human Rights Commission ("MHRC") on January 7, 2008. The MHRC issued a Right to Sue letter to Plaintiff on January 29, 2008.

## IV. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the Court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1).

"By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## V. DISCUSSION

In this action, Plaintiff seeks to recover under Title VII, the MHRA, EPA and for fraud due to Defendant's representations in its Code of Ethics. The Court will address each of Plaintiff's claims separately.

### A.   *Count I: Title VII, Gender Discrimination*

A plaintiff who alleges gender discrimination may survive summary judgment in two ways. *See Arraleh v. County of Ramsey*, 461 F.3d 967, 974 (8th Cir. 2006). First, the plaintiff may present direct evidence of discrimination. *Id.* Direct evidence is evidence that shows a specific link between the discriminatory animus and the challenged decision. *Id.* Alternatively, if direct evidence is not available, a plaintiff can avoid summary judgment by creating an inference of discrimination under the analysis prescribed in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802-05 (1973). Because Plaintiff has presented no direct evidence of discrimination, the application of the analysis detailed in *McDonnell Douglas* is appropriate.

*McDonnell Douglas* provides a three-prong burden shifting analysis. *Id.* Under the first prong of this test, a plaintiff must establish a prima facie case of discrimination under Title VII. *Id.* This means that a plaintiff must show: (1) that the plaintiff is a member of a protected class, (2) that the plaintiff was qualified to perform her job, (3) that plaintiff suffered an adverse employment action, and (4) that similarly situated employees outside the protected class were treated differently. *Id.*, *see also Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 785 (8th Cir. 2007). If the plaintiff is able to establish a prima facie case, the employer may then rebut the plaintiff's "case by articulating one or more legitimate, nondiscriminatory reasons for its decision." *Arraleh*, 461 F.3d 967, 975 (8th Cir. 2006) (citing *Pope v. ESA Serv., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005)). If the employer is able to present a nondiscriminatory reason for its conduct, the plaintiff then has "the opportunity to demonstrate that the proffered reason is not the true reason for the employment decision." *Arraleh*, 461 F.3d at 975-76 (quoting *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006)).

Plaintiff has failed to establish a prima facie case of gender discrimination. Plaintiff has not identified any similarly situated male employees and she has also failed to identify ways in which men were treated differently. Plaintiff's co-workers, when she was a Compliance Representative and when she worked in the Compliance Department within the CDC, all had different job responsibilities than Plaintiff. Viewing the evidence in the light most favorable to Plaintiff, she has failed to proffer legally sufficient evidence of a prima facie case of gender discrimination.

Even if Plaintiff were able to establish a prima facie case, Defendant could easily rebut Plaintiff's case because the only adverse employment action Plaintiff experienced at U.S. Bank was her termination. Her termination was legitimate and non-discriminatory, because it is perfectly reasonable for an employer to terminate an employee who disrupts a presentation, stating that an immediate supervisor is "full of shit." Plaintiff has presented no evidence whatsoever, showing that this behavior was not the true reason for her termination, and as a result, her claim of gender discrimination will be dismissed.

### B. *Count I: Title VII, Hostile Work Environment*

To survive a motion for summary judgment on her claim of hostile work environment, Plaintiff must present sufficient evidence to support a prima facie case. A prima facie case of hostile work environment requires a showing that; (1) Plaintiff is a member of a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on her protected status, and (4) the harassment affected a term, condition or privilege of her employment. *Devin v. Schwan's Home Services, Inc.*, 491 F.3d 778, 785 (8th Cir. 2007).

For harassment to satisfy the fourth element above, it "must be extreme," because the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)

(internal quotations and citations omitted).  This inquiry has two parts, "[f]irst, the harassment must be sufficiently severe or pervasive to create an 'objectively hostile' work environment . . . . Second, if the victim does not subjectively perceive the environment as abusive, then the conduct has not altered the conditions of employment."  *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1047 (8th Cir. 2005) (citing *Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993)).

Plaintiff's complaints of harassment can be divided into three groups.  First, she asserts that Roberts chuckled when she was riding on an elevator with him and the elevator's recording said "going down."  This was the only sexually offensive comment or act that Plaintiff claims was made to her, and she fails to state a claim because this one chuckle is not "sufficiently severe or pervasive to create" a hostile work environment.  *Id.*

Plaintiff's other two complaints of harassment relate to her interactions with Brannam.  She assets that he flirted with her in three separate incidents in 2005, and then he stopped interacting with her and denied any previous flirtatious behavior.  Plaintiff's allegations relating to the three incidents of flirting does not satisfy the second part of this inquiry, because Plaintiff did "not subjectively perceive the environment as abusive."  Plaintiff stated at her deposition that she "didn't characterize it as sexual harassment" and said that "the flirting and - you know, it wasn't offensive at all."  As a result, these alleged comments were not sufficient conduct to alter "the conditions of employment" and fail to make a prima facie case.

Plaintiff's allegations related to Brannam's denial of his feelings and ignoring and avoiding Plaintiff fail because his conduct was not "objectively hostile."  *Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004).  Brannam avoided interacting with Plaintiff because he wanted to make sure that Plaintiff did not construe his behavior as flirting or

13

sexual harassment. Title VII does not require that co-workers talk to each other, and Brannam's actions were absolutely reasonable under the circumstances. An objective look at the evidence presented to the Court demonstrates that "a reasonable person with the same characteristics as the victim" would not perceive the workplace to be hostile. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007).

Plaintiff has failed to present evidence demonstrating that any of the of harassment she alleges affected a term, condition or privilege of her employment. *Devin*, 491 F.3d at 785. As a result, she has failed to state a prima facie case of hostile work environment, and this claim will be dismissed.

### C. *Count I: Title VII, Retaliation*

Plaintiff's retaliation claim is analyzed under the same burden-shifting analysis the Court utilized in analyzing her claim for discrimination. *See Stewart v. Independent School Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007). As a result, Plaintiff must first establish a prima facie case of retaliation, and produce evidence "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; (3) a causal connection exists between the two events." *Id.* (quoting *Green v. Franklin National Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006)).

Plaintiff has failed to introduce evidence that she engaged in a protected activity. Plaintiff "need not establish the conduct which she opposed was in fact discriminatory, but rather must demonstrate a good faith, reasonable belief that the underlying conduct violated the law." *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903 (8th Cir. 2006) (quoting *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1195 (8th Cir. 2001)). Plaintiff spoke with a co-worker regarding Roberts' request that she send a fax and complete a personality test from a magazine.

14

She also told Lovell that she was "glad" Roberts was leaving and stated that she "really hope[d] that you consider taking the job because of the hostility that I'm experiencing with the group," but provided no elaboration on her sentiment. Plaintiff's statements to her co-worker are not statutorily protected activity because "no reasonable person could have believed [that the incidents Plaintiff reported] violated Title VII's standard." *Smith v. International Paper Co.*, 523 F.3d 845, 849 (8th Cir. 2008) (quoting *Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 835 (8th Cir. 2008)). Similarly, Plaintiff's statement to Lovell is not statutorily protected because reporting hostility from co-workers is merely a general complaint about the workplace and does not constitute opposition to an unlawful employment practice.

Plaintiff also complained to Gabris and Lovell about Brannam, however, she has repeatedly stated that she was not offended by the two comments he made, and that they were friendly. Plaintiff stated at her deposition that she "didn't characterize it as sexual harassment" and said that "the flirting and - you know, it wasn't offensive at all." To survive a motion for summary judgment, a plaintiff "must demonstrate a good faith, reasonable belief that the underlying conduct violated the law." Plaintiff's statements demonstrate that she did not believe that Brannam's comments violated the law, and she has failed to present evidence demonstrating a prima facie case of retaliation.

### D. *Count II: Missouri Human Rights Act*

Plaintiff's second Count alleges a claim under the MHRA for gender discrimination, hostile work environment and retaliation. Defendant asserts that this Count should be dismissed because it was not filed within ninety days of the issuance of the Right to Sue letter by the MHRC. Under the MHRA, an aggrieved party must file a verified complaint in writing within

15

180 days of the alleged act of discrimination. *See* Mo. Rev. Stat. § 213.075(1). Plaintiff satisfied this requirement when she filed her charge of discrimination with the MHRC on January 7, 2008.

The MHRC issued a Right to Sue letter to Plaintiff on January 29, 2008. Claims brought under the MHRA "shall be filed within ninety days from the date of the commission's notification letter to the individual." Mo. Rev. Stat. § 213.111.1. The [s]tatutes of limitation contained in the Missouri Human Rights Act have been strictly construed." *Hammond v. Municipal Correction Institute*, 117 S.W.3d 130, 138 (Mo. Ct. App. 2003). As a result, Plaintiff had until April 28, 2008 to bring her claims under the MHRA.

This lawsuit was filed on February 8, 2008, however, Plaintiff did not state that she was bringing a claim under the MHRA in her original Complaint. Plaintiff then amended her complaint on February 29, 2009, however, the First Amended Complaint also did not contain a MHRA claim. Plaintiff did not add a claim under the MHRA until her Second Amended Complaint was submitted to the Court on February 17, 2009.[9]

Neither Party has addressed the issue of whether this claim should relate back to the amended complaint. "Under Federal Rule of Civil Procedure 15(c), an amended complaint relates back to the date of the original pleading 'whenever the claim . . . asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth . . . in the original pleading.'" *Johnson v. City of Kansas City, MO*, 2008 WL 65395, at * 2 (W.D. Mo. Jan. 4, 2008) (citing *Donnelly v. Yellow Freight System, Inc.*, 874 F.2d 402, 410 (7th Cir. 1989)). Plaintiff's original

---

[9] The Court notes that Plaintiff filed a Second Amended Complaint with the Court on November 14, 2008. This Second Amended Complaint contained a claim under the MHRA. This was the first time Plaintiff raised this claim, however, this Second Amended Complaint was not accepted by the Court. This does not affect the Court's analysis because even if the Court had accepted this Second Amended Complaint, the MHRA claim was filed well after the April 28, 2008 deadline.

16

Complaint was filed within the ninety-day period specified by the MHRA. "The rationale behind Rule 15(c)(2) is that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Maegdlin v. International Ass'n of Machinists and Aerospace Workers, Dist. 949*, 309 F.3d 1051, 1052 (8th Cir. 2002). The Court has reviewed Plaintiff's original Complaint, and it provided Defendant with fair notice of the allegations underlying Plaintiff's MHRA claim. The allegations underlying Plaintiff's MHRA claim echo her claims under Title VII, and therefore arise out of the "conduct, transaction or occurrence set forth or attempted to be set forth" in her original complaint. Fed. R. Civ. P. 15(c)(2). Because these claims relate back to the original complaint, they will not be dismissed as untimely.

In Count II of her Second Amended Complaint, Plaintiff alleges violations of the MHRA for gender discrimination, hostile work environment and retaliation. Plaintiff's claims under the MHRA are identical to the claims she brought under Title VII, and claims under the MHRA are analyzed in the same manner as claims under Title VII. *Wittenburg v. American Exp. Financial Advisors, Inc.*, 464 F.3d 831, 842 n.16 (8th Cir. 2006) (gender discrimination); *LeGrand v. Area Resources for Community & Human Services*, 394 F.3d 1098, 1101 (8th Cir. 2005) (hostile work environment); *Richey v. City of Independence*, 540 F.3d 779, 783 (8th Cir. 2008) (retaliation). The Court concluded that Plaintiff's claims under Title VII should be dismissed because Plaintiff failed to present evidence demonstrating a prima facie case of gender discrimination, hostile work environment or retaliation. Similarly, Plaintiff's claims under the MHRA will be dismissed.

### E.     *Count III: Equal Pay Act*

In her third Count, Plaintiff seeks to recover under the EPA. "[T]o establish a prima-facie case under the EPA, an employee must prove an employer paid different wages to men and

17

women performing equal work." *Drum v. Leeson Elec. Corp.*, 565 F.3d 1071, 1072 (8th Cir. 2009) (citing *Brown v. Fred's, Inc.*, 494 F.3d 736, 740 (8th Cir. 2007)). Only after a plaintiff establishes a prima facie case does the burden shift to an employer to provide a statutory affirmative defense. *Drum*, 565 F.3d at 1072 (citing *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003)).

Plaintiff has presented no evidence to the Court that she performed similar work to male co-workers. *See Holland v. Sam's Club*, 487 F.3d 641, 645 (8th Cir. 2007). Indeed, the evidence that has been presented to the Court on the job responsibilities of Plaintiff's co-workers demonstrates that they had job duties distinct from Plaintiff's responsibilities. For example, employees in the Compliance Department of the CDC had different job responsibilities, and unlike her co-workers, Plaintiff was largely responsible for Sarbanes-Oxley reporting, CIS reporting and ATS reporting.

> The Equal Pay Act prohibits discrimination 'between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'

*Id.* (quoting 29 U.S.C. § 206(d)(1)). As a result, "[Plaintiff] must present at least some evidence showing she and the other employees performed similar work under similar conditions." *Holland*, 487 F.3d at 645. Plaintiff has failed to satisfy this burden, and cannot establish a prima facie case under the EPA. This claim will be dismissed.

### F.    *Count IV: Fraud*

In her fourth claim for relief, Plaintiff alleges fraud due to Defendant's representations in its Code of Ethics. The elements of a claim for fraud are:

> (1) a representation, (2) its falsity at the time made, (3) its materiality, (4) the speaker's knowledge of the falsity, (5) the speaker's intent that the statements should

18

be acted upon by the other party in the manner contemplated, (6) the other party's ignorance of the falsity, (7) the other party's reliance on the perceived truthfulness of the representation, (8) the right to rely upon the statement, and (9) damages.

*Ryann Spencer Group, Inc. v. Assurance Co. of America*, 275 S.W.3d 284, 287 (Mo. Ct. App. 2008). Plaintiff has presented no evidence that any of the claims in the Code of Ethics were actually false. *See Brown v. New York Life Ins. Co.*, 147 F.App'x 640, 642 (9th Cir. 2005); *Doud v. Countrywide Home Mortg. Loan*, 1997 WL 292127, at *12-13 (D. Kan. 1997). Additionally, Plaintiff has presented no evidence that U.S. Bank knew the statements in the Code of Ethics were false. *Id.*

Defendant has satisfied its burden of proof to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa*, 838 F.2d at 273. As a result, Plaintiff must respond by setting forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. Plaintiff has failed to introduce evidence to support this claim, and summary judgment is appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. #54] is **GRANTED.** All of Plaintiffs' claims are **DISMISSED, with prejudice.**

So Ordered this 26th Day of August, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

19